IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WAYNE MITCHELL, | : | |
| | : | |
| Petitioner, | : | NO. 2:15-cv-01465-CB |
| | : | |
| v. | : | THIS IS A CAPITAL CASE. |
| | : | |
| JOHN E. WETZEL, et al., | : | |
| | : | |
| Respondents. | : | |

**PETITIONER'S REPLY IN SUPPORT OF
RENEWED MOTION FOR DISCOVERY**

Petitioner, Wayne Mitchell, through counsel, respectfully submits this Reply in Support of Renewed Motion for Discovery in connection with his pending Petition for a Writ of Habeas Corpus.

**I.   LEGAL STANDARD GOVERNING DISCOVERY**

The Commonwealth contends that discovery in habeas proceedings is discretionary, and that discovery requests should be considered in light of the standards governing evidentiary hearings. Ans. 4-7.

There is no question that Rule 6 of the Rules Governing Habeas Corpus Proceedings is a flexible provision that gives broad discretion to the District Court. *E.g.*, *Bracy v. Gramley*, 520 U.S. 899, 909 (1997) ("[t]he scope and extent . . . of [habeas corpus] discovery is a matter confided to the discretion of the District Court."). While this discretion is broad, it continues to be the "duty" of the district court to grant discovery "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief . . . .'" *Id.* at 908-09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).

Where the petitioner has made such a showing of need for the requested information, discovery should be granted regardless of whether the petitioner is also entitled to an evidentiary hearing. *See, e.g., Jones v. Wood*, 114 F.3d 1002, 1008-09 (9th Cir. 1997) ("[d]iscovery is available to habeas petitioners at the discretion of the district court for good cause shown, regardless of whether there is to be an evidentiary hearing"). Indeed, in construing Rule 6 the Supreme Court has recognized that there will be situations in which discovery is appropriate to develop the relevant facts, even though an evidentiary hearing might not be. *Blackledge v. Allison*, 431 U.S. 63, 81-83 (1977); *see East v. Scott*, 55 F.3d 996, 1002 (5th Cir. 1995) (district court should have ordered discovery and, following discovery, decided whether petitioner was entitled to an evidentiary hearing). The Commonwealth's attempt to conflate discovery and evidentiary hearings is unsupported and meritless.

## II. DOCUMENT REQUESTS A AND B.

**1.** The Commonwealth seeks to cast doubt on Ms. Britton's account of her post-homicide interview with uniformed police officers near the scene of the offense. The Commonwealth contends (a) that there is "absolutely no evidence of record to support Ms. Britton's claim that she spoke with police officers on the morning of the murder," Ans. 9, and (b) that the trial prosecutor testified that he was not aware of any such interview, but that no report of an interview would be generated if no information was gained. *Id.*

Point (a) begs any relevant question. It is true that there is no evidence of record from any source other than Ms. Britton concerning the post-homicide interview. Ms. Britton, however, told post-conviction counsel about that interview in 2008, repeated her account to Pittsburgh police officers in 2012, and testified about it under oath in the post-conviction hearing. The Commonwealth presented no evidence rebutting her account, and while the PCRA court rejected Petitioner's claim that trial counsel was ineffective for failing to interview Ms.

Britton pre-trial, *see Commonwealth v. Mitchell*, CC Nos. 199711609 et al., Op. 46-54 (Allegheny Ct. Com. Pl. July 31, 2013), it did not discredit her testimony concerning the post-homicide interview. Thus, while the only existing evidence of record concerning that interview comes from Ms. Britton, nothing in the record undermines her sworn testimony that such an interview took place.

Point (b) does nothing to rebut Ms. Britton's testimony. The trial prosecutor's testimony would establish at most that he personally was not aware of any post-homicide interview, NTP 166-67, but also that no *report* of an encounter such as Ms. Britton described would have been prepared and forwarded to him. NTP 349-50. The absence of a "report" that would be forwarded to the prosecutor does nothing to exclude the possibility that members of the police informally recorded contacts with citizens at or near the scene of the offense by means of a form, log, or handwritten notes.

**2.** The Commonwealth relies on and recites the state court's ruling that Petitioner had failed to establish the existence of a record of the post-homicide interview. Ans. 10 (quoting *Commonwealth v. Mitchell*, 105 A.3d 1257, 1277-78 (Pa. 2014)). The Commonwealth asserts that the state court ruling was not unreasonable. Ans. 10-11.

Petitioner has already argued that the state court decision was unreasonable based on the existing record. Pet'r Mem. 34. In addition, a state court ruling may be found unreasonable when the decision was procedurally unfair. When procedural unfairness in the state court deprives the petitioner of a fair opportunity to develop the facts, that ruling does not require deference, because § 2254(d) has been satisfied.

In *Brumfield v. Cain*, 135 S. Ct. 2269 (2015), for example, the petitioner had received a death sentence before the Supreme Court ruled the intellectually disabled (then termed the

3

mentally retarded) categorically ineligible for the death penalty in *Atkins v. Virginia*, 536 U.S. 304 (2002). After *Atkins*, Brumfield sought an evidentiary hearing to prove his intellectual disability, but the state court summarily denied the application. *Brumfield*, 135 S. Ct. at 2275. The Supreme Court ruled that none of the factual determinations on which the state court had relied could "foreclose" relief, and that the state court ruling denying a hearing therefore rested on an unreasonable determination of the facts. 135 S. Ct. at 2277. It was "critical to remember" that Brumfield did not have to prove his case or even show that he "likely" was intellectually disabled to obtain a hearing. He needed only to raise a reasonable doubt. *Id.* at 2281.

Other federal courts have found the deference provisions of 28 U.S.C. § 2254(d) satisfied because of procedurally unfair state court adjudications. In *Panetti v. Quarterman*, 551 U.S. 930, 948 (2007), the petitioner challenged the state court's failure to grant him the hearing and other procedural protections guaranteed in *Ford v. Wainwright*, 477 U.S. 399 (1986), to condemned prisoners who may be incompetent for execution. The *Panetti* Court agreed that the state court "failed to provide petitioner with a constitutionally adequate opportunity to be heard." 551 U.S. at 952. Because the state court's denial of the competency claim could not be "reconciled with any reasonable application of the controlling standard in *Ford*," satisfying § 2254(d), *id.* at 952-53, the habeas court must resolve the claim "without the deference that AEDPA otherwise requires" – in other words, *de novo*. *Id.* at 953-54. The Court considered Panetti's claim on the merits and without deferring to the state court's competency finding. *Id.* at 954; *accord Branch v. Sweeney*, 758 F.3d 226, 241 (3d Cir. 2014) (state court ruling on ineffective assistance claim without holding hearing at which petitioner could have elicited trial counsel's reasons, if any, for not calling witnesses was unreasonable determination of facts).

Here, Petitioner sought the requested discovery in state court but was denied it. Renewed Mot. 6-8. The state court's decision, which was based on an undeveloped record, was procedurally unreasonable and cannot be a basis for denying discovery in this Court.

**3.** Finally, the Commonwealth asserts that a search has shown no documents in its files that contain Ms. Britton's name other than the original July 1998 police report, a version of that report containing her handwritten corrections, and a September 1997 report of an interview with Brian Hall. Ans. 11.

While we accept the representation that the Pittsburgh Police did not locate any additional reports concerning Ms. Britton, this does not mean that discovery is unwarranted or pointless. Requests A and B sought *all* "3-0" forms generated by police on September 10, 1997, and *all* police notes, whether formal or informal, related to Ms. Britton. The absence of formal reports simply does not establish that no such informal documents were created or maintained.[1]

## III. DOCUMENT REQUEST C.

The Commonwealth opposes this request on the ground that the trial prosecutor testified that Ms. Britton did not tell him that she remembered the telephone conversations in a dream, and that the Commonwealth's current counsel represented to the PCRA court that there were no notes reflecting any "dream" statement in the trial prosecutor's file. Ans. 12-13 (quoting NTP 162-64, 171-72). Assuming that to be the case, it does not establish that discovery is unwarranted. Any discussion by Ms. Britton of the fact that she first spoke to the police on

---

[1] While not directly relevant to Petitioner's discovery request, it is notable that there is apparently no record of what led detectives to approach Ms. Britton over ten months after the offense. In other words, there is no record that would reveal whether (a) Ms. Britton asked to talk to the police; (b) another person or persons informed police that Ms. Britton could have relevant information; (c) some member of the police noted or remembered that Brian Hall had mentioned Ms. Britton over ten months ago; or (d) some other scenario. At some time there was likely a record – even if only a note – of what led the police to formally interview Ms. Britton, but it was apparently not located in the recent records search.

September 10, 1997, or concerning why she never came forward of her own accord in the over ten months between the offense and her July 1998 statement, would be relevant to Petitioner's claim, and hence discoverable under the standards governing Rule 6.

The Commonwealth also notes (as Petitioner did) that the request was denied in state court on the basis of the work product doctrine. Ans. 11. To the extent that this is intended to assert work product in this Court as a basis for denying the requested discovery, it is utterly inadequate either to invoke the work product privilege or to enable Petitioner to reply.

A party asserting work product must "expressly make the claim . . . ." Fed. R. Civ. P. 26(b)(5)(A)(i). The Commonwealth has not done so. It merely indicates that in the past it "has asserted attorney work product as the reason why the notes are not discoverable." Ans. 11. That is not an express claim of work product; even if construed as one, it is still inadequate.

A claim of work product "has three elements: [t]he material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative." *BNP Paribas v. Bank of New York Trust Co., N.A.*, 2013 WL 2434686, *3 (S.D.N.Y. June 5, 2013) (quotation marks and citations omitted). The party invoking work product must "describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that . . . will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). The Commonwealth has not made any attempt to comply with this portion of the rule.

Furthermore, the initial burden of showing that the privilege applies is on the Commonwealth, as the asserting party:

> The initial burden of justifying the application of the work product doctrine is on the asserting party, and the burden is a heavy one because privileges are neither lightly created nor expansively construed. In particular, the burden of showing a

> document is entitled to work-product protection may not be discharged by mere conclusory or *ipse dixit* assertions.

*In re MTBE Products Liability Litigation*, 293 F.R.D. 568, 574 (S.D.N.Y. 2013) (quotation marks, footnotes and citations omitted). *Accord In re Grand Jury Subpoenas*, 318 F.3d 379, 384 (2d Cir. 2003).

Here, the Commonwealth relies entirely on "conclusory or *ipse dixit* assertions" with respect to the work product privilege. Accordingly, it has utterly failed to meet its initial burden. Even were the Commonwealth to meet its burden, Petitioner would be entitled to disclosure of at least some work product on a showing of substantial need. Fed. R. Civ. P. 26(b)(3)(A)(ii). Until and unless the Commonwealth meets its initial burdens of describing the non-disclosed material and justifying the application of the work product doctrine, however, Petitioner cannot be required to make the showing of substantial need. The Commonwealth should be ordered to meet its burden or to produce the requested discovery.

## IV. DOCUMENT REQUEST D.

Petitioner withdraws document request D.

## V. DOCUMENT REQUESTS E AND F.

The Commonwealth contends that Petitioner could have pursued discovery of Ms. Britton's treatment records during the PCRA proceedings, and that discovery now is barred by *Cullen v. Pinholster*, 563 U.S. 170 (2011). Ans. 14-15. Both contentions are without merit.

Petitioner has already described his efforts to obtain records concerning Ms. Britton's treatment. Renewed Mot. 8-9. While the Commonwealth asserts Petitioner could have sought the records previously, it does not explain how Petitioner could have done so. There is no provision in the PCRA rules for discovery from third parties. *See* Pa. R. Crim. P. Rules 573(B) (regarding pretrial disclosures by the Commonwealth); 902(E) (regarding discovery in PCRA

7

proceedings). Nor did Petitioner have a release from Ms. Britton prior to the 2012 hearing, or a location from which she obtained treatment even after that.

*Pinholster* did not directly address Rule 6 or substantially alter the rules governing discovery. *Pinholster* held that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on its merits." 563 U.S. at 181. While this holding may limit evidentiary hearings for claims that were decided on the merits in state court until after § 2254(d) review is completed, Rule 6 discovery is quite different from an evidentiary hearing. The Commonwealth's attempts to lump them together are unsound.

As shown above, discovery under Habeas Rule 6 is a pre-hearing, discretionary measure that provides additional information to the habeas petitioner. *See* Habeas Rule 6, Advisory Committee Notes. It does not in itself place (or even attempt to place) evidence in the record for the district court's review. And because the "good cause" standard of Rule 6 is satisfied by a showing that the requested material is relevant to the merits of the petitioner's claim, *see Bracy*, 520 U.S. at 908-09, the fact that it may not be relevant to the § 2254(d) inquiry is not by itself a reason to preclude all discovery. *See Pinholster*, 131 S. Ct. at 1412 (Breyer, J., concurring in part) (discussing ways in which new facts may be relevant, aside from § 2254(d) analysis).

Thus, while in *Pinholster* the Supreme Court limited the ways in which a federal court may consider new evidence, it did not curtail a federal court's discretion to grant discovery under Rule 6. *See, e.g., Pike v. Johnson*, 2013 WL 2457718, at *3 (E.D. Tenn. June 6, 2013) ("While *Cullen v. Pinholster* limits the scope of review under 2254(d)(1), it says nothing about the court's discretion to allow discovery."); *High v. Nevens*, 2013 WL 1292694 (D. Nev. Mar. 29, 2013) ("[T]he Supreme Court made no holding in *Pinholster* as to whether a district court may grant leave for discovery before it determines whether 2254(d)(1) has been satisfied on the

8

merits."); *Williams v. Houk*, 2012 WL 6607008, at *4 (N.D. Ohio Dec. 18, 2012) ("*Pinholster* itself did not reference Habeas Rule 6 or *Bracy v. Gramley*, nor does it otherwise directly address the issue of habeas discovery.") (citations omitted); *Monroe v. Warden*, 2012 WL 4342890, at *10 (S.D. Ohio Sept. 21, 2012) ("While *Pinholster* does not permit this Court to consider extra-record evidence in deciding the 2254(d)(1) question, it does not dictate the order in which that question must be considered in a habeas case and . . . does not discuss habeas discovery at all."); *Conway v. Houk*, 2011 WL 2119373, at *3 (S.D. Ohio May 26, 2011) (same).[2]

Because there is good cause for the discovery request, and *Pinholster* does not preclude the requested discovery, this Court should grant the discovery.

## CONCLUSION

For the reasons set forth herein and in Petitioner's previous submissions, the Court should grant the requested discovery.

                                            Respectfully submitted,

                                            /s/ Matthew Lawry
                                            MATTHEW LAWRY
                                            MICHAEL GONZALES
                                            Assistant Federal Defenders
                                            Federal Community Defender Office
                                            for the Eastern District of Pennsylvania
                                            601 Walnut Street, Suite 545 West
                                            Philadelphia, PA 19106
                                            (215) 928-0520

Dated: November 9, 2017

---

[2] In *Gibson v. Wetzel*, No. 2:11-cv-4550-CDJ, 2016 WL 1273626 (E.D. Pa. Mar. 31, 2016), the court rejected a similar argument by the Commonwealth based on *Pinholster*. The court also granted the Commonwealth the right to appeal pursuant to 28 U.S.C. § 1292(b). *Id.* at *4. The Third Circuit has held the appeal in abeyance. *Gibson v. Secretary Dept. of Corr.*, No. 15-9000, Order (3d Cir. July 21, 2017).